UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 09-cv-3513 (JFB)(AKT)
_____

ANDREA C. SCHUPBACH,

Plaintiff,

VERSUS

ERIC K. SHINSEKI, SECRETARY DEPARTMENT OF VETERAN AFFAIRS,

Defendant.

_____

**MEMORANDUM AND ORDER**
August 23, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Andreana C. Schubach ("plaintiff" or "Schupbach"), brought this action against Eric K. Shinseki in his capacity as Secretary of the Department of Veteran Affairs ("defendant" or "Shinseki"), alleging that: (1) defendant discriminated against plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"); and (2) defendant unlawful retaliated against plaintiff for engaging in activities protected by the aforementioned statute. In particular, plaintiff, who is a Financial Account Technician at the Veterans Administration Medical Center ("VAMC") in Northport New York, claims that she was not selected for two positions for which she applied in 2007 – an Accounting Technician position and a Civilian Payroll Technician position – because she is African American and because she filed a complaint in 2005, and another complaint in November 2007, with the Equal Employment Opportunity Commission.

Defendant now moves for summary judgment on all claims. For the reasons set forth below, the Court grants defendant's motion in its entirety. With respect to the race discrimination claims, defendant has articulated a legitimate, non-discriminatory reason for the employment decisions – namely, that more qualified individuals were selected for the open positions without consideration of race or color. In fact, it is undisputed that an African-American candidate was selected for one of the three open Account Technician positions for which plaintiff applied. In response, plaintiff has failed to put forth any evidence from which a rational jury could conclude

that the reason was pretext and, instead, the decisions were motivated by race. The three pieces of evidence relied upon by plaintiff are grossly insufficient, even in combination, to defeat the summary judgment motion. First, the EEO affidavit of a union steward at the VAMC contains inadmissible hearsay statements and conclusory opinions about the VAMC's purported historical treatment of minorities. The affidavit is not based upon any personal knowledge by the affiant of plaintiff's situation or any other particular instances of discrimination at the VAMC and, thus, provides no basis for an inference of discrimination. Second, the hiring statistics provided by plaintiff are rendered meaningless by the fact that plaintiff failed to present the race or color of the larger applicant pool from which the candidates for each position were selected. At oral argument, plaintiff's counsel attributed the failure to develop the EEO affidavit and hiring statistics into admissible and potentially relevant evidence to a lack of resources. However, a purported lack of resources does not cure the defective nature of this evidence, and does not transform it into an admissible and relevant form upon which a jury could reasonably rely to show discrimination. Finally, plaintiff's claim that she was subject to an unfair interview because she was asked about how she handled stress certainly does not provide an inference of discrimination. The question was asked because, as acknowledged in plaintiff's opposition papers, plaintiff had taken a prior leave for stress-related issues. In any event, there is simply no evidence that the question, or that any aspect of the interview and selection process, were motivated by plaintiff's race or color.

Plaintiff's retaliation claims also cannot survive summary judgment. Plaintiff asserts in a conclusory fashion that her failure to obtain the open positions in 2007 was retaliation for filing EEO complaints in 2005 and 2007. However, plaintiff has put forth no evidence from which a rational jury could find a causal connection between the protected activity and the adverse action. With respect to the Civilian Payroll Technician position, the approximately two years between the protected activity and adverse action is simply too attenuated to give rise to an inference of retaliation, and there is simply nothing in the record to support an inference of retaliation. Similarly, with respect to the Accounting Technician positions, although plaintiff's non-selection was within several months of her November 2007 EEO complaint, defendant has offered a legitimate, non-discriminatory reason for the decisions (*i.e.*, better qualified applicants), and plaintiff has proffered no evidence from which a reasonable jury could conclude that defendant was motivated by a retaliatory animus. In short, even construing the evidence most favorably to plaintiff, there is simply no evidence in the record from which a rational jury could find the failure to hire plaintiff for the open positions were a pretext for retaliation. Accordingly, summary judgment on the retaliation claims is also warranted.

I.     Facts

A.     Factual Background

The facts, construed in the light most favorable to plaintiff, the non-moving party, *see Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005), are as follows:

On July 15, 1990, plaintiff was hired by the Veterans Administration Medical Center (the "VAMC") in Northport, New York, to perform voucher audits. (Def.'s 56.1

Statement ¶ 1.)[1]  In 2001, plaintiff became a Financial Account Technician at the VAMC, and she continues to hold that position today.  (*Id*. ¶ 2.)  In 2006, Mary Pat Hessman ("Hessman") was hired as the Chief of Financial Services at the VAMC and has held that position since that time.  (*Id*. ¶ 3.)  Plaintiff became a member of Hessman's staff when Hessman was hired in 2006.  (*Id* ¶ 4.)  Plaintiff's immediate supervisor was John DeRudder ("DeRudder").  (*Id*. ¶ 5.)  DeRudder's immediate supervisor was Nancy Salas ("Salas").  (*Id*.)  Salas's immediate supervisor was Hessman.  (*Id*.)

1.  Plaintiff's EEO Activity

In 2005, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") regarding "forgery" against Nancy Salas.  (*Id*. ¶ 6.)  The 2005 complaint was dismissed by the EEOC.  (*Id*. ¶ 7; Pl.'s 56.1 ¶ 6.)

2.  Plaintiff Applies for the Civilian Payroll Technician Position

In April 2007, plaintiff applied for the position of Civilian Payroll Technician ("CPT") at the VAMC.  (*Id*. ¶ 8.)  The CPT position was first announced to employees of the VAMC and, in the event no internal candidates were selected, the position would then be offered to outside applicants.  (*Id*. ¶ 9.)

Plaintiff was deemed a qualified internal candidate for the CPT position by the VAMC Human Resources Department, was referred for an interview, and was subsequently interviewed by a panel consisting of VAMC employees Joann Beckman ("Beckman"), Maria Colon ("Colon") and Eleanor Desmond ("Desmond").  (*Id*. ¶¶ 10, 11.)  Hessman did not interview the plaintiff for the position.  However, Hessman, Salas, and Colon selected the interview panel.  (*Id*. ¶ 12.)  Hessmon testified at her deposition to the following:  (1) Desmond was selected for the panel because she worked in the CPT position that was being filled; (2) Colon was selected because she was the supervisor of the CPT vacancy; and (3) Beckman was chosen because she had payroll processing experience in other departments.  (*Id*. ¶¶ 13, 14, 15; Pl.'s 56.1 Statement ¶¶ 13, 14, 15.)

After plaintiff was interviewed, the position was opened up for external applicants and external applicants were subsequently interviewed.  (*Id*. ¶¶ 16, 17.)  On September 25, 2007, plaintiff learned that she was not selected for the position and that Catherine Grayson ("Grayson"), a Caucasian external candidate, was selected for the CPT position.  (*Id*. ¶¶ 18, 19, 20.)  Hessman testified at her deposition that plaintiff was not selected because, based on plaintiff's performance in the interview, the interview panel determined that plaintiff was not the highest qualified candidate to perform the CPT position.  (*Id*. ¶ 21; Pl.'s 56.1 Statement ¶ 21.)  Hessman also testified that the interview panel recommended Grayson for the position based on her interview, and Hessman signed off on what the panel wanted to do.  (*Id*. ¶ 22; Pl.'s 56.1 Statement ¶ 22.)  In addition, Hessman testified that she felt that Grayson had specific experience in her background that made her well suited for position – that

---

[1] Where one party's 56.1 Statement is cited, the other party does not dispute the facts alleged, unless otherwise stated.  In addition, although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record, when utilizing the 56.1 statements for purposes of this summary of facts.

3

is, Hessman understood Grayson had experience in processing payroll and handling bookkeeping for a local business, and Hessman learned that she was able to thoroughly explain how she did it to the point that the interview panel felt she could perform the duties of the CPT. (*Id*. ¶ 23; Pl.'s 56.1 Statement ¶ 23.)

On October 2, 2007, plaintiff first contacted an EEOC counselor in connection with her CPT application and, on November 5, 2007, filed an EEO complaint alleging that Hessman discriminated against her because of her race and color. (*Id*. ¶¶ 24, 25.) Plaintiff also believed that Hessman retaliated against her because of the 2005 EEO Complaint that plaintiff filed against Salas. (*Id*. ¶ 26.)

3. Plaintiff Applies for the Accounting Technician Position

On July 10, 2007, plaintiff applied for an Accounting Technician ("AT") position. (*Id*. ¶ 27.) Plaintiff was not selected for any open AT positions. (*Id*. ¶ 28.) The vacancies were filled by Vita Gengler ("Gengler"), Olga Tundy Alise ("Alise") and Roseann Ray Abbott Salathe ("Salathe"). (*Id*. ¶ 29.) Hessman testified that she believed that these were the most qualified candidates. (*Id*.) Gengler and Salathe are Caucasian, and Alise is African American and is from Nigeria. (*Id*. ¶¶ 30, 33, 35.) Hessman testified that Gengler was selected for the AT position because she believed she was the most qualified person to perform the position based on her experience and the way she interviewed. (*Id*. ¶ 31; Pl.'s 56.1 Statement ¶ 31.) Hessmon testified that Gengeler:

> had exceptional qualifications working as a payment processor in [another position]. She worked on Third Party accounts receivable adjustments for bill of payment discrepancy and difficult payment issues. She performed problem solving for accounts receivable documents in the MCCF areas. She interfaced with Fiscal Staff on a daily basis and always exhibited a high level of customer services and professionalism. She also did accounting work for an outside company.

(*Id*. ¶ 32; Pl.'s 56.1 Statement ¶ 32.) In regards to Salathe, Hessman testified that she:

> had exceptional qualifications. This was a lateral transfer from the Navy as an Accounting Technician GS7 to VA as an Accounting Technician. Same GS 525-7 position, just a different agency and slightly different accounting system (STAR vs. FMS). Ms. Salathe was looking for a reassignment from the West Coast to the East Coast where her parents live. She handled the very same variety of transactions that the Northport VAMC accounting technicians work on here.

(*Id*. ¶ 34; Pl.'s 56.1 Statement ¶ 34.) With respect to Alise, Hessman testified that he was selected for the position because he:

> had excellent qualifications. [He] worked several years for accounting collections (healthcare receivables and writeoff and revenue) work for another hospital in the NYC area. He recently obtained his BS Accounting Degree in 2006. [He] wishe[d] to perform a bigger variety [of] accounting transaction work like

4

that performed in Fiscal Service at the VAMC Northport.

(*Id*. ¶ 36.; Pl.'s 56.1 Statement ¶ 36.)

On February 14, 2008, plaintiff filed an EEO complaint in connection with her AT application and alleged that Hessman discriminated against her based on her race. (*Id*. ¶¶ 37, 38.) Plaintiff believes that Hessman also retaliated against her because of her prior EEO activity. (*Id*. ¶ 39.)

B. Procedural History

Plaintiff commenced this action *pro se* on August 11, 2009. On February 17, 2011, the law firm of Jonathan Edward Kirchner, P.C. filed a notice of appearance on behalf of plaintiff. By motion filed April 20, 2011, plaintiff's counsel moved to amend the complaint. The plaintiff's motion was granted on May 4, 2011. The amended complaint was filed on May 5, 2011, alleging four causes of action – (1) a Title VII race discrimination claim based upon her failure to obtain the CPT position; (2) a Title VII race discrimination claim based upon her failure to obtain one of the AT positions; (3) a Title VII retaliation claim based upon her failure to obtain the CPT position; and (4) a Title VII retaliation claim based upon her failure to obtain one of the AT positions.

By letter dated September 29, 2011, defendant requested a pre-motion conference in anticipation of moving for summary judgment. The Court held a pre-motion conference and set a briefing schedule. Defendant filed his motion on December 30, 2011. Plaintiff's opposition was filed on January 30, 2012. Defendant's reply was filed on March 2, 2012. Oral argument was held on April 2, 2012. The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

#### A. Title VII Discrimination Claim

Plaintiff claims that she was discriminated against based on her race when she was not selected for the CPT or AT positions. For the reasons set forth below, the Court finds that no reasonable jury can find that plaintiff was discriminated against based on her race.

##### 1. Legal Standard

Because plaintiff presents no direct evidence of discriminatory treatment based on her race, the Court reviews her claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case of discrimination under Title VII,

6

a plaintiff must show (1) membership in a protected class; (2) she was qualified for the position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis*." *See Zimmermann v. Assocs. First Capital Corp*., 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *McDonnell Douglas,* 411 U.S. at 802)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). Instead, the key inquiry is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id*.; *Connell v. Consol. Edison Co. of N.Y., Inc*., 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of antidiscrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

Regarding the final prong of the *McDonnell Douglas* framework, it is well-settled that a plaintiff can raise an inference of discrimination by showing disparate treatment – namely, that a similarly situated employee outside the protected group received more favorable treatment. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *accord Carter v. New Venture Gear, Inc*., 310 Fed. App'x 454, 457 (2d Cir. 2009); *see also Mandell v. Co. of Suffolk*,

316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). The law does not require the employees to be similarly situated in all respects, but rather requires that they be similarly situated in all material respects. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("A plaintiff is not obligated to show disparate treatment of an identically situated employee."); *accord Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).

2.   Application

For the purposes of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case for her race discrimination claims. In response, defendant has put forth a legitimate, non-discriminatory reason for why she did not receive either the AT or the CPT positions – that is, that there were other candidates that were more qualified. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race discrimination by examining each parties' evidence  individually and then proceeding to evaluate the evidence as a whole.  *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 519-20 (S.D.N.Y. 1999), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

For the reasons set forth below, the Court finds that plaintiff has proffered no evidence from which a reasonable jury could conclude that discriminatory animus based on race motivated defendant not to hire plaintiff for the AT or CPT positions.

In support of her race discrimination claims, plaintiff argues that defendant has a history of discriminatory conduct. (Pl.'s Opp. Br. at 7-8.) Plaintiff relies on the opinion of Ramona Sears ("Sears"), a Medical Technologist at the VAMC in 2008, as well as statistical data. (*Id*.) Plaintiff also claims that her interview was "unfair" because she was asked questions relating to stress. (*Id*. at 9.) As set forth below, this evidence, individually and in combination, is insufficient to defeat defendant's summary judgment motion because no rational jury could conclude based upon this record that the defendant's decisions were motivated by race.

First, Sear's opinion is provided by plaintiff in a document entitled "Affidavit of Ramona Sears Taken telephonically on March 18, 2008" ("the "Sears Affidavit"). (Declaration of Jonathan Edward Kirchner ("Kirchner Decl."), Ex. 2 at Bates Numbers 665-675.)[2] The Sears Affidavit is part of the record of Investigation from the Department of Veteran Affairs Office of Resolution Management regarding plaintiff's claim. (Kirchner Decl. at ¶ 5.) Plaintiff argues that Sears' affidavit is admissible "[a]s lay opinion testimony pursuant to Federal Rule of Evidence 701; or alternatively, admissible evidence based upon personal knowledge pursuant to Federal Rule of Evidence 602." (Pl.'s Op. Br. at 7.) Defendant argues that the Court cannot consider the affidavit because it is inadmissible hearsay, and even if the Court could consider the affidavit, the affidavit is speculative, conclusory and not based on any personal knowledge. (Def.'s Reply Br. at 7-9.) The Court agrees with the defendant that the relevant statements relied upon by plaintiff in the Sears Affidavit are hearsay, and thus, need not be considered by

---

[2] The Court refers to the Bates Numbers on the bottom right of each page provided in Exhibit 2 of the Kirchner Decl.

the Court. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."). However, even if this Court was to consider the affidavit, the evidence proffered by plaintiff is not sufficient to withstand defendant's summary judgment motion.

The Sears Affidavit is conclsuory and is not based on any personal knowledge. In the affidavit, Sears indicates that she did not supervise the plaintiff but knows her,

> [f]rom the fact that she brought a complaint to the AFGE and somehow it wasn't addressed. Then she sought me out because I've been with the Union for 27 years. So she asked me some questions and I answered them.

(Kirchner Decl., Ex. 2, at 667.) However, Sears does not indicate why, apart from plaintiff telling her, she believes plaintiff was qualified for the position. She never supervised plaintiff and does not indicate that she ever worked with plaintiff at the VAMC in Northport. (*Id*. at 668.) Moreover, Sears admits that she was not involved with the review of applicants for the CPT or AT positions. (*Id*. at 669.) In fact, when asked if she knew the qualifications of the person selected she states, "No I don't, but evidently from what Ms. Schupbach said, the woman had to be trained because she came from the outside and didn't know the system, whereas [Schupbach] did." (*Id*. at 672.) Thus, Sears has no first-hand knowledge about the candidates that were actually selected. Her only source of information is the plaintiff. Accordingly, the Sears Affidavit and the statements regarding Schupach's qualifications in relation to the candidates actually hired is not evidence from which a reasonable jury can infer racial discrimination.

In addition, Sears' comments regarding the history of discrimination in the workplace are made in a conclusory manner. For example, Sears states that:

> You have to understand something, the karma here at Northport with Human Resources of people of color, has been extremely negative. It is extremely hard for a person of color to get past – You can get a six or a seven, but it's extremely difficult. You've got people here who have been denied and then found.

(*Id*. at 671.) Nowhere in the Sears Affidavit does she provide any factual or evidentiary support for this assertion. For example, she does not provide any examples of other employees who were discriminated at the Northport VA either before or during the time period in question. Thus, the conclusory statements in the Sears affidavit are not sufficient evidence from which a reasonable jury could conclude that plaintiff was racially discriminated against.[3] *See, e.g.*, *Bryant v. Wynne*, 2:07-340-SB-RSC, 2008 WL 4361242, at *14 (D. S.C. Sept. 24, 2008), *aff'd* 319 F. App'x 174 (4th Cir. 2009) (granting summary judgment for defendant where plaintiff made conclusory assertions, including an allegation that

---

[3] At oral argument, the Court questioned plaintiff's counsel about the evidentiary deficiencies in the Sears Affidavit. In particular, the Court asked the plaintiff why Sears was not deposed or why counsel did not contact Sears and have her provide a more substantial affidavit. In response, plaintiff's counsel noted that, in order to contact Sears for an affidavit, he would need defendant's permission. Moreover, plaintiff's counsel stated that there was a "resource issue" that precluded a deposition or other forms of discovery that may have uncovered additional details to support the conclusory assertions.

"management had an unspecified history of not hiring minorities and EEO complainants," and noting that "[p]laintiff offers no specific facts to support these allegations and fails to show how any of them were connected to [the Superintendent's] hiring decision. These unsupported conclusory allegations do not constitute evidence and do not create triable issues of fact.")

Similarly, the statistical data provided by plaintiff is not sufficient evidence to defeat a motion for summary judgment. Plaintiff states that:

> The undisputed facts in this matter also demonstrate that during the times relevant to this lawsuit (2006-2008) Hessman, the selecting official, was responsible for 13 hirings/promotions. Only 2 of the 13 were African-Americans. This is approximately 15%. 9 of the 13 were Caucasian. This is approximately 69%. This is exactly the type of circumstantial evidence that demonstrates disparate treatment.

(Pl.'s Opp. Br. at 8.) However, despite plaintiff's contention, the statistics provided are not sufficient evidence to overcome a motion for summary judgment. The statistics do not provide the pool of applicants that were considered by Hessman before any selection was made. Without information on all of the applicants, the statistics do not provide any basis for an inference of discrimination.[4] Moreover, the statistics indicate that two of the hires were African American and that two of the applicants were not Caucasian or African American, and thus of a different race. Therefore, the statistics demonstrate that Hessman hired and promoted minorities despite plaintiff's contention.

In addition, plaintiff's claim that her interviewers had "personal vendettas" against her, even if taken as true, is not sufficient evidence to defeat summary judgment. Plaintiff claims that "the interviewers used a question about stress that had not been used for prior promotions during Plaintiff's interview, the reason being that all the interviewers, who apparently have personal vendettas against Plaintiff, were aware that Plaintiff had a prior leave for stress related issues." (Pl.'s Opp. Br. at 9.) Thus, plaintiff herself admits that the questions being asked were not related to her race, but instead were based on the interviewers' knowledge of the plaintiff's employment history.[5] "It is axiomatic that mistreatment at work, whether through subjection to a hostile work environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII *only* when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis in original). Thus, since the questions admittedly were not asked because of plaintiff's race, this evidence is not sufficient to demonstrate that plaintiff was discriminated against based on her race.

---

[4] At oral argument, the Court questioned plaintiff's counsel about the statistics (both for discrimination and retaliation) and the incomplete nature of such statistics for purposes of attempting to draw any rational inference of discrimination or retaliation. In response, plaintiff's counsel provided no response other than to state that is was a "fair question" and note that plaintiff was "limited in resources" and, thus, could not conduct additional discovery or depositions on this issue.

[5] In fact, as stated in plaintiff's deposition (Pl.'s Dep. at 54-58) and confirmed at oral argument, plaintiff does not allege that the interviewers on the panel harbored any discriminatory animus, but rather that it was Ms. Hessman who had such animus.

In fact, there is additional evidence in the record to support the defendant's contention that the decisions were not motivated by race. In particular, it is uncontroverted that an African-American applicant was selected for one of the three open AT positions for which plaintiff applied. This undisputed fact provides further support that the failure to select plaintiff for the open positions was not motivated by plaintiff's race. *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) (granting summary judgment for defendant on race discrimination claim where plaintiff was replaced with a member her protected class); *see also Williams v. Mead Coated Board, Inc.*, 836 F. Supp. 1552, 1571 (M.D. Ala. 1993), *aff'd* --- F. App'x ----, 41 F.3d 668 (granting summary judgment in race discrimination case because defendant "promoted a number of black employees to positions which plaintiffs, who are also black sought" and, given those circumstances, "the court cannot accept discrimination as a plausible explanation for [defendant's] decision"). In short, in this case, there are simply no facts "from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

In sum, the Court concludes, construing the evidence most favorably to the plaintiff, that no reasonable jury could find that plaintiff was discriminated on the basis of her race based upon the evidence in this record, including the statistics, the Sears Affidavit, and the plaintiff's evidence that she was subjected to harder questions in the interview. Accordingly, summary judgment is granted for defendant on plaintiff's Title VII race discrimination claims.

B.  Title VII Retaliation

Plaintiff claims that she was retaliated against for her prior EEO activity because she was not chosen for the CPT position or the AT positions. For the reasons set forth below, construing the evidence most favorably to plaintiff, the Court concludes that no reasonable jury could conclude that plaintiff was the victim of retaliation. Thus, the Court grants defendant's motion for summary judgment on the retaliation claims.

The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas Corporation. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that

the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

Defendant argues that plaintiff's third claim – that she was not selected for the CPT position in 2007 because of her prior EEO activity in 2005 – must be dismissed because plaintiff has not demonstrated a causal connection. This Court agrees.

In Title VII retaliation claims, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Where there is no direct evidence of such animus, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by a retaliatory action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)); *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Cooperative Extension*, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03-CV-3522 (CPS), 2006 U.S. Dist. LEXIS 22482, at *55-56 (E.D.N.Y. March 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999), *abrogated on other grounds, Burlington Northern & Sante Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006) (abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier).

Plaintiff attempts to overcome this long gap in time by arguing the following:

> Defendant's argument [about the long delay] ignores the undisputed fact that Hessman came to the Northport VA in 2006 and was the RMO of Plaintiff, and was obviously aware of it and did not forget. It also ignores the fact that all three interviewers were well aware of Plaintiff's prior EEO complaint. This is direct evidence of retaliatory animus . . .

(Pl.'s Opp. Br. at 5-6.) Moreover, plaintiff claims that because the thirteen people hired did not engage in EEO activity, there is circumstantial evidence of discrimination.

First, Hessman's knowledge of plaintiff's prior EEO activity is not direct

12

evidence of retaliatory animus. Moreover, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'. . . . [Alleged retaliatory] action taken (as here) 20 months later suggests, by itself, no causality at all." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted); cf. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and the adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment."); *Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) ("[A] period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related"). Here, even assuming that plaintiff is correct that Hessman and the interviewers knew of plaintiff's EEO activity in 2005, the temporal proximity is too attenuated. In this case, approximately two years passed from when plaintiff filed her EEO complaint and from when she was not selected for the CPT position. Such a lapse in time, in light of the whole record which demonstrates, as discussed *supra*, that defendant had a non-discriminatory basis for not hiring plaintiff, is too attenuated, and thus, plaintiff has failed to demonstrate a *prima facie* case of discrimination on her third cause of action for retaliation in not hiring her in the CPT position.[6]

However, defendant argues that both causes of action for retaliation, *i.e.*, in not selecting plaintiff for the CPT position and the AT position, must be dismissed because, as with the discrimination claim, plaintiff has articulated a legitimate, nondiscriminatory reason for not selecting plaintiff and plaintiff has failed to come forth with sufficient evidence from which a rational jury could find that defendant's stated reason is pretext. This Court agrees.

As discussed *supra*, defendant has proffered a legitimate, non-discriminatory reason for not selecting plaintiff – namely, that that there were other candidates that were more qualified than plaintiff. Thus, the burden shifts back to the plaintiff. However, plaintiff has not demonstrated by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista*, 445 F.3d at 169. The only evidence offered in plaintiff's opposition to support her claim of retaliation is the nature of the questions asked during her interview and the number of employees hired who did not engage in EEO activity.[7]

---

[6] With respect to the fourth cause of action regarding retaliation based upon plaintiff's failure to obtain the open AT positions, the Court assumes that plaintiff satisfies the *prima facie* case because it appears (although not entirely clear from the record and not specifically argued by plaintiff) that those decisions occurred within several months of the plaintiff's subsequent EEO activity in November 2007 regarding the CPT position. However, temporal proximity is not sufficient by itself to overcome a non-discriminatory reason by demonstrating pretext. *See El Sayed v. Hilton Hotel Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of prextext."). As discussed *infra*, defendant has articulated a non-discriminatory reason and plaintiff has proffered no evidence from which a rational jury could conclude such reason was a pretext for retaliation.

[7] The only evidence pointed to in plaintiff's opposition to demonstrate discrimination and pretext are the Sears affidavit, the statistical data and the nature of plaintiff's interview. Plaintiff only relies on

13

As with the racial discrimination claim, plaintiff's claims regarding her interview are not sufficient to withstand summary judgment. As discussed *supra*, the plaintiff admitted that she was asked about her stress level because of her prior leave due to stress. Accordingly, the questions is the interview cannot rationally provide an inference of retaliation.

Moreover, the fact that the thirteen people hired by Hessman did not have prior EEO activity is not sufficient to defeat defendant's summary judgment motion. As with the statistical data relating to race, plaintiff has not indicated how many persons within the applicant pool were engaged in prior EEO activity, or their qualifications. In other words, if no one else in the hiring pool had prior EEO activity, this statistic would be meaningless in terms of any inference of retaliation. As defendant correctly notes,

> Pointing only to the thirteen individuals hired/promoted by Ms. Hessman, Plaintiff presents no evidence of the larger applicant pool that was considered for each opportunity (*i.e.* Plaintiff presents no evidence that the people Ms. Hessman hired/promoted were favored *over* other applicants who had EEO history). Similarly, there is no evidence about the qualifications of those hired/promoted by Ms. Hessman, nor about the qualifications of other applicants. There is no evidence that Ms. Hessman knew of any candidate's EEO history, let alone that Ms. Hessman ever considered, and then failed to hire/promote, a candidate who had previously participated in protected activity. Plaintiff has no statistical expert to analyze and reach her interpretative conclusions; instead, Plaintiff's argument is based entirely on her own subjective speculation as to what Ms. Hessman's hiring "record" means, without complete date from the available applicant pool which would support these conclusions.

(Def.'s Reply Br. at 4-5.) Defendant further points out that "[i]f plaintiff were to prevail on this type of argument, it would mean that *any* decision Ms. Hessman were to make which favors an employee with no EEO history could subject her to a retaliation suit. The absurdity of this effect speaks for itself." (*Id*. at 5 n.1.)

The Court agrees with defendant and concludes (as with the statistics on the race discrimination claims) that these grossly incomplete statistics, and the speculative and unsupported interpretations that plaintiff would like the jury to draw therefrom, do not permit a rational inference of retaliation. A plaintiff cannot simply substitute utter speculation for the competent proof that would be necessary to permit rational inferences by a jury of discrimination or retaliation. *See, e.g.*, *Soto v. Runyon*, 13 F. Supp. 2d 215, 223 (D.P.R. 1998) ("The flaws in Plaintiff's proffer of these statistics are evident, the primary one being that without information about the qualifications of the applicants, the Court has no way of knowing whether these statistics suggest [discrimination in] hiring.").

---

Sears' statements as they relate to her argument that the VAMC discriminated against her based on race. (Pl.'s Opp. at 7-8.) Moreover, plaintiff's statistical data only identifies candidates hired by race, not by prior EEO activity. (*Id*. at 8.) Accordingly, the Court does not analyze the Sears affidavit or the statistical data in the context of plaintiff's retaliation claims.

14

Accordingly, even construing the evidence most favorably to the plaintiff and drawing all inferences in her favor, no rational jury could conclude that any of these acts were retaliation for plaintiff filing of an EEO complaint in 2005 or 2007. Thus, summary judgment on the retaliation claims is warranted.

\* \* \*

In sum, the Court recognizes that it must proceed with great caution in granting summary judgment in discrimination cases where intent, as drawn from inferences, is a core issue. However, as the Second Circuit has noted, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). That is precisely the situation here. Plaintiff relies on pure speculation and has not produced sufficient evidence to support a rational finding that, more likely than not, plaintiffs race or protected activity was the real reason for her failure to obtain the CPT or AT positions. Accordingly, the Court finds that plaintiff has failed to raise a genuine question of fact as to her claims and grants defendant's motion for summary judgment in its entirety.

IV. CONCLUSION

For the reasons set forth herein, defendant's motion for summary judgment is granted in its entirety on all claims, and the complaint is dismissed in its entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 23, 2012
Central Islip, NY

\* \* \*

Plaintiff is represented by Jonathan Edward Kirchner, Esq., of Jonathan Edward Kirchner, PC, 149 Main Street, Huntington, New York, 11743. Defendant is represented by Robert W. Schumacher, II, Esq., of the U.S. Attorney's Office, 610 Federal Plaza, Central Islip, NY 11722.